IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:25-mj-373 |
| v. ) | |
| ) | |
| PETER ANDREW STINSON, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF IN SUPPORT OF PROBABLE CAUSE**

The government points to the following five statements to establish probable cause that Mr. Stinson committed a violation of 18 U.S.C. § 871 by making "true threats" constituting serious expressions of an intention to commit an act of unlawful violence against President Donald Trump:

- February 11, 2025: "You know you need to find me. Maybe I'm lying. Maybe I do have the skills. Maybe I've got it all figured out how to pop the orange ball. Or maybe I don't. It doesn't matter. People will try. We pray for success."

- February 18, 2025, "Take the shot. We'll deal with the fallout . . . Politically, the only solution is impeachment. Realistically, the only solution is violence."

- February 20, 2025: "I would twist the knife after sliding it into his fatty flesh."

- February 22, 2025: "Skull. Means. Opportunity. Will. I'll take all four today, please. . . . The Ides of March can't get here fast enough."

- February 28, 2025: "Target practice tonight. I set some [orange emoticon] on the railing. Let's shoot some oranges! Plink. Plunk. Boom. Bop."

None of these statements meet the standard of constituting "true threats." A foundational principle of this country is the right to engage in "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts*

*v. United States*, 394 U.S. 705, 708 (1969) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964)). Even when expressions of "political opposition to the President" are "very crude [or] offense," or "vituperative, abusive, and inexact," such expressions remain protected by the First Amendment. *Id.*

For example, President Trump said shortly before the November 2024 election that former Representative Liz Cheney "should have guns trained on her face."[1] Likewise, Representative Paul Gosar in November 2021 posted a video on his Twitter and Instagram accounts depicting him killing Representative Alexandria Ocasio-Cortez and attacking President Biden.[2] Such statements are constitutionally-protected because they constitute public expressions in a public forum of political opposition against political figures, not "serious expressions" that the "speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). The statements identified by the government in Mr. Stinson's criminal complaint are no different.

Recognition of the Constitution's protection of such speech is not to endorse its content or to encourage others to engage in similarly offensive political discourse. But authorizing a federal arrest and prosecution based upon "public[ly] address[ed]

---

[1] David A. Graham, *Trump Suggests Training Guns on Liz Cheney's Face*, The Atlantic (Nov. 1, 2024), available at:
https://www.theatlantic.com/politics/archive/2024/11/trump-liz-cheney-war/680485/
[2] Donie O'Sullivan, *Republican congressman posts video depicting violence against Ocasio-Cortez and Biden*, CNN (Nov. 10, 2021), available at:
https://www.cnn.com/2021/11/09/politics/gosar-anime-video-violence-ocasio-cortez-biden

[comments] … contain[ing] highly charged political rhetoric" requires "extreme care." *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982).

The central forum for the exchange of political views now occurs in "cyberspace—the 'vast democratic forums of the internet' in general, and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (citations omitted). As such, construction of statutes prohibiting speech must accommodate "breathing room" for the First Amendment to avoid deterring protected speech by those merely "concerned about the expense of becoming entangled in the legal system." *Counterman*, 600 U.S. at 75. Because Mr. Stinson's public posts on Twitter and Bluesky did not, as a matter of law, constitute "serious expressions" that he would commit an act of unlawful violence against President Trump, the Court should dismiss the criminal complaint for failure to establish probable cause of a violation of 18 U.S.C. § 871.

## I. Whether Statements Establish Probable Cause of a "True Threat" is a Threshold Legal Question.

As an initial matter, "[w]hether a written communication contains either constitutionally protected 'political hyperbole' or an unprotected 'true threat' is a question of law and fact that [courts] review de novo." *United States v. Bly*, 510 F.3d 453, 457 (4th Cir. 2007); *see also United States v. Francis*, 164 F.3d 120, 123 n.4 (2d Cir. 1999) ("we note that the question of whether a defendant's communication is a true threat rather than speech protected by the First Amendment—*a threshold question of law for the court*—is different from the question of whether a reasonable

3

person would interpret the communication as a true threat—a question for the jury at trial.") (emphasis added, citations omitted).

The First Amendment requires de novo review to ensure "that the speech in question actually falls within [an] unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits." *United States v. Bartow*, 997 F.3d 203, 208 (4th Cir. 2021) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 505 (1984)); *United States v. O'Nan*, 452 F. App'x 280, 282 (4th Cir. 2011) (citing *Bose Corp.* and holding First Amendment challenge is subject to de novo review); *United States v. Napa*, 370 F. App'x 402, 404 (4th Cir. 2010) ("We review de novo whether a written communication is constitutionally protected speech or 'an unprotected 'true threat.''"); *see also Bose Corp.*, 466 U.S. at 508 n.27 ("First Amendment questions of 'constitutional fact' compel this Court's de novo review."). Moreover, statements that may have "undoubtedly frightened" the object of the statements may yet fail to satisfy the requirement of "convey[ing] a *serious expression of intent*" by the speaker to engage in unlawful violence against another person. *United States v. White*, 670 F.3d 498, 514 (4th Cir. 2012), *abrogated on other grounds by Elonis v. United States*, 575 U.S. 723 (2015).

Likewise, if "there is no genuine issue of material fact, the existence of probable cause becomes a purely legal question …." *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 272 (4th Cir. 1998). In this case, the Court is fully able to evaluate the content of the statements at issue along with the context in which they were made to make a legal determination as to whether they constitute "true threats" that fall outside of

First Amendment protection. *See, e.g.*, *Watts*, 394 U.S. at 708 (holding that statement by defendant who was drafted that if required to carry rifle, "the first man I want to get in my sights is L.B.J." could not be interpreted as a "true threat"); *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (holding that "to the extent [defendant's facebook post] could possibly be considered a 'threat' ... it was not a 'true threat' based on context because it lacked believability and was not serious ...").

## II. The Context of the Statements Weighs Against a Finding of a True Threat.

The parties agree that the context in which a statement is communicated is an important factor in the legal determination of whether a statement constitutes a "true threat." *See, e.g., Watts*, 394 U.S. at 708 (evaluating statement "in context"); *White*, 670 F.3d at 513 (holding that statements "directed to others" on a public website rather that to an intended victim weighed against finding statements constituted a "true threat."). But the context weighs against a finding of probable cause in this case.

Statements made privately are more likely to fall in the category of "true threats." *See, e.g., United States v. Bly*, 510 F.3d 453, 459 (4th Cir. 2007) ("Unlike in *Watts*, the Letter was not addressed to a public audience and, as in *Lockhart*, it was delivered privately to specific individuals."). Indeed, every case cited by the government in its Brief in Support of Probable Cause, ECF 21, in which the Fourth Circuit affirmed a finding that statement constituted true threats involved communications made directly to an intended victim rather than to the public generally on a website. See ECF 21 at 9 (citing *United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997) (phone call threatening to blow up federal building); *United States*

*v. Darby*, 37 F.3d 1059, 1067 (4th Cir. 1994) (phone calls threatening IRS agents); *United States v. Roberts*, 915 F.2d 889, 890 (4th Cir. 1990) (letter sent to chambers of Justice Sandra Day O'Connor); *United States v. Napa*, 370 F. App'x 402, 403 (4th Cir. 2010) (email to victims of mass shooting at Virginia Tech); *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973) (letter sent to judge)).

Similarly, in *United States v. Lockhart*, 382 F.3d 447 (4th Cir. 2004) — a case central to the government's argument in its Supplemental Brief, *see* ECF 28 at 4-6, 11-12, 15 — the Fourth Circuit distinguished the personal delivery of a letter to a recipient from "speech at a political rally." *Id.* at 452. The court reasoned that "[n]othing in Miss Lockhart's actions suggest[ed] she intended to engage in political discourse …." *Id.*; *accord Bly*, 510 F.3d at 459 (noting that "the context in which the Lockhart letter had been handed to the Food Lion supervisor was private, as opposed to the public anti-war rally in *Watts*."). As discussed below, statements made in a public forum like Twitter are treated very differently.

### A. The Fact that Statements At Issue Were Made On a Public Forum Weighs Against Finding a True Threat.

In the context of statements made "to the public generally," the Fourth Circuit concluded that statements encouraging violence toward a particular victim did not constitute "true threats." *White*, 670 F.3d at 513. Likewise, in *United States v. Bagdasarian*, 652 F.3d 1113, 1121 (9th Cir. 2011), the fact that the defendant posted statements on a "non-violent discussion forum [] would tend to blunt any perception that statements made there were serious expressions of intended violence." *Id.* Accordingly, while direct communication with a subject of a purportedly threatening

6

statement supports a finding of a "true threat," merely posting a communication in a public forum weighs against such a finding.

The government seeks to distinguish *Bagdasarian* on the ground that the Ninth Circuit construed 18 U.S.C. § 879 to require proof that the "speaker subjectively intend[ed] the speech as a threat," a standard the government asserts is "<u>irrelevant</u> here." ECF 28 at 14-15 (emphasis in original). But *Counterman* established that the First Amendment requires proof "beyond a reasonable doubt that [a speaker] subjectively intended to threaten another." *In re Rendelman*, 129 F.4th 248, 256 (4th Cir. 2025) (holding *Counterman* requires "that the government had to prove beyond a reasonable doubt that [the defendant] subjectively intended to threaten another, and the government acknowledges that this omission was error."). The government thus cannot distinguish *Bagdasarian* on this ground.[3]

Furthermore, even if *Bagdasarian* had applied an incorrect mens rea requirement, that error would have had no bearing on the Ninth Circuit's reasoning as to the "objective" assessment of whether the statements at issue constituted "true threats." *See Bagdasarian*, 652 F.3d at 1110 (holding that statements encouraging others to shoot Obama did not satisfy objective standard to constitute a "true

---

[3] The government also points to a footnote in *Bagdasarian* in which the court distinguished the elements of § 871 – which it stated "includes only an objective and no subjective test" – and § 879, which included "both an objective and subjective test." Gov't Supp. Br. (ECF 28) at 14 (citing *Bagdasarian*, 652 F.3d at 1117 n.14). Bagdasarian's gloss on § 871's lack of a subjective mens rea element, like the Fourth Circuit's in *White*, did not survive *Elonis* and *Counterman*. While comparing the subjective mens rea requirements in § 871 and § 879 prior to those decisions might have been like comparing "apples and oranges," ECF 28 at 14, they're both apples now.

7

threat."). The same is true with respect to the Fourth Circuit's identical reasoning in *White*, 670 F.3d at 513. Statements made to "the public generally," even statements that "clearly directed others in the form of advocacy" to engage in non-imminent violence, do not support a conclusion that "a reasonable recipient would understand [such] communications to be *serious expressions of intent to commit harm.*" *White*, 670 F.3d at 513-14.

### B. Statements About a Political Figure Receive Heightened First Amendment Protection.

'[N]ot all speech is of equal First Amendment importance,' " [] and where matters of purely private significance are at issue, First Amendment protections are often less rigorous." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). "[D]issenting political speech," by contrast, is "at the First Amendment's core." *Counterman*, 600 U.S. at 81. "[C]rude" and "offensive" statements expressing "a political opposition to the President" thus receive greater First Amendment protection than similar statements made against someone who was not engaged in a similarly political position. *See Watts*, 394 U.S. at 708.

### C. Abstract Statements Encouraging Others to Engage in Violence or Planning Do Not Constitute True Threats.

In *United States v. White*, 670 F.3d at 513, the Fourth Circuit held that statements on a public forum that a specific person should be "drug [sic] out into the street and shot" and that he "is an enemy … of all humanity and he must be killed" "did not communicate an intent to take any action whatsoever" and thus "fell short of being true threats." *Id*; *see also United States v. Miselis*, 972 F.3d 518, 539-41 (4th Cir.

2020) (holding that the First Amendment protects "abstract advocacy" and striking down statutory prohibitions against "encouraging," "promoting," or "urging" others to engage in violence). Likewise, in *United States v. Bagdasarian*, 652 F.3d at 1119, the Ninth Circuit held that statements on a public website that then-presidential-candidate Obama "will have a 50 cal in the head soon" and "shoot the nig," "convey[ed] no explicit or implicit threat on the part of [the defendant] that he himself will kill or injure Obama." *Id.* at 1115, 1119.

To constitute a "true threat," a communication must constitute a "serious expression" "conveying that [the] speaker means to 'commit an act of unlawful violence." *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). Furthermore, abstract statements about "planning" is not equivalent to a "true threat." *See United States v. Baker*, 890 F. Supp. 1375, 1386 (E.D. Mich. 1995), *aff'd sub nom. United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997) ("Section 875(c) ... does not address planning crimes, per se, but transmitting threats to injure or kidnap").

### III. The Charged Statements on a Public Forum, Involving the President, Do Not Constitute a Serious Expression that Mr. Stinson Intends to Commit an Act of Unlawful Violence.

The statements identified in the government's Supplemental Brief are the following:

- February 11, 2025: "You know you need to find me. Maybe I'm lying. Maybe I do have the skills. Maybe I've got it all figured out how to pop the orange ball. Or maybe I don't. It doesn't matter. People will try. We pray for success."

9

- February 18, 2025, "Take the shot. We'll deal with the fallout . . . Politically, the only solution is impeachment. Realistically, the only solution is violence."

- February 20, 2025: "I would twist the knife after sliding it into his fatty flesh."

- February 22, 2025: "Skull. Means. Opportunity. Will. I'll take all four today, please. . . . The Ides of March can't get here fast enough."

- February 28, 2025: "Target practice tonight. I set some [orange emoticon] on the railing. Let's shoot some oranges! Plink. Plunk. Boom. Bop."

In the government's telling, the first statement reflects a communication meant to "speak[] directly to law enforcement, telling them they *need* to find him, because he has 'maybe' figured out how to murder the President." ECF 28 at 8. But the statement does not mention law enforcement. Or murder. Or violence of any kind. Nor does the statement indicate that Mr. Stinson will engage in violence. These facts "make[] it impossible [] to conclude that a reasonable recipient would understand [Stinson's] communications to be *serious expressions of intent to commit harm.*" *White*, 670 F.3d at 513-14.

On the contrary, the first statement makes perfect sense in the context of non-violent political efforts to impeach President Trump, such as those engaged in by Mr. Stinson. Indeed, the government candidly admitted in its prior pleading that Stinson was "smart enough to know not to be too specific about any plans he had or his intention to kill the President because he was aware that using such direct language would get him in trouble with law enforcement." ECF 21 at 10. The government's concession explains why this Court should not find probable cause in this case.

The second statement is directed at the public generally, and is indistinguishable from the statements on a website in *White* that a persons should be "shot" in the street" and "must be killed," or the public statements in *Bagdasarian* that Obama should be shot. Neither constitute serious expressions that convey a speaker's intention to engage in unlawful violence because abstract encouragement of others to engage in violence does not constitute a "true threat." *White*, 670 F.3d at 513.

The third statement likewise does not constitute a serious expression of intent to engage in harm. Statements of fantasy about what a speaker would do if he had the opportunity is not the same thing as a serious expression of an intention to engage in violence against President Trump. *See Watts*, 394 U.S. at 708.

The fourth statement (which likely contains a typographical error in posting the word "Skull" rather than the word "Skill"), does not mention President Trump, violence, or an intention to engage in violence against President Trump.

Finally, the last statement stating that the speaker planned to engage in target practice to shoot oranges similarly does not constitute a serious expression of an intention to engage in violence. Use of emoticons and onomatopoeia like "plink" and "bop" are inconsistent with serious expressions of intention to commit unlawful violence.

The bottom line is that none of these statements come close to constituting true threats reflecting a serious expression of intent to engage in unlawful violence against

President Trump. For this reason, the Court should decline to find probable cause exists in this case to support the charged offense of 18 U.S.C. § 871.

## Conclusion

Mr. Stinson respectfully requests that the Court find no probable cause exists based on the allegations contained in the Criminal Complaint.

Respectfully submitted,

Paul Andrew Stinson

By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org