IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:25-CR-209 |
| v. ) | |
| ) | |
| PETER ANDREW STINSON, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO DISMISS THE JULY 10, 2025, INDICTMENT AND REQUEST FOR DISMISSAL WITH PREJUDICE**

The government hastily charged Mr. Stinson with two counts of alleged violations of 18 U.S.C. § 871 notwithstanding its awareness of binding caselaw establishing that Mr. Stinson's statements did not objectively constitute "true threats." Because the government cannot use "Rule 48(a) to gain a position of advantage or to escape from a position of less advantage in which the Government found itself as the result of its own election[,]'" *United States v. Salinas*, 693 F.2d 348, 353 (5th Cir. 1982), we respectfully request that the Court grant the government's motion to dismiss the July 10, 2025, indictment, but that it do so with prejudice.

**I.      Background**

Section 871 of Title 18 criminalizes threats of violence by a speaker against the President, the President-elect, or the Vice President. 18 U.S.C. § 871(a). However, only "[t]rue threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). Statements are defined as "true threats" based on (1) the statement's objective content in context, and (2) the defendant's subjective understanding that a statement

would be understood as a threat. *Id.* at 73. A "true threat" means "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Accordingly, the word "threat" in a federal statute prohibiting threatening speech "encompasses only communications expressing an intent [by the speaker] to inflict injury in the present or future." *United States v. Stock*, 728 F.3d 287, 297 (3d Cir. 2013). Put differently, § 871 only proscribes speech that unconditionally threatens violence at the hands of the speaker, not public statements encouraging others to commit violence. *See Watts v. United States*, 394 U.S. 705, 708 (1969); *United States v. White*, 670 F.3d 498, 513 (4th Cir. 2012), *abrogated on other grounds by Elonis v. United States*, 575 U.S. 723 (2015).

On July 10, 2025, a grand jury in the Eastern District of Virginia issued a two-count indictment alleging that Mr. Stinson violated 18 U.S.C. § 871. Specifically, Count 1 alleges that "[o]n or about February 18, 2025, … the defendant Peter Andrew Stinson, did knowingly and willfully make a threat to inflict bodily harm upon and to take the life of the President of the United States, Donald J. Trump, by posting, on the social media platform Bluesky and after a series of posts expressing his desire to inflict bodily harm upon and to take the life of the President: 'Take the shot. We'll deal with the fallout . . . Politically, the only solution is impeachment. Realistically, the only solution is violence.'" *See* Indictment (ECF 32) at 1.

Count 2 alleges that "[o]n or about February 20, 2025," Mr. Stinson "did knowingly and willfully make a threat to inflict bodily harm upon and to take the life

2

of the President of the United States, Donald J. Trump, by posting, on the social media platform Bluesky and after a series of posts expressing his desire to inflict bodily harm upon and to take the life of the President: 'I would twist the knife after sliding it into his fatty flesh.'" *Id.* at 2.

On August 19, 2025, the government filed a motion to dismiss "the Indictment filed on July 10, 2025," although it inaccurately described the indictment as charging only "one count." ECF 49 at 1; *see also* ECF 49-1 (proposed order).

## II. Argument

The statements charged in the July 10, 2025, Indictment do not objectively constitute "true threats" because they constitute (a) public statements about a political figure; (b) are not unconditional; and (c) do not convey that violence will occur by a means that the speaker controls. Accordingly, the failure of the July 10 Indictment to allege violations of § 871 was clear and obvious well before the government obtained that indictment. *See Watts*, 394 U.S. at 708 (holding that statement was not a "true threat" as a matter of law); *Stock*, 728 F.3d at 298 ("[A] few cases may be so clear ... that they can be resolved as a matter of law."); *United States v. Landham*, 251 F.3d 1072, 1082 (6th Cir. 2001) (holding that statement was "not a 'communication containing a threat,'" and that "the indictment failed, as a matter of law, to allege a violation of § 875(c)").

The government has an obligation not to bring charges for which evidence is insufficient to sustain a conviction. *See United States v. DeLucca*, 630 F.2d 294, 298 (5th Cir. 1980) ("the government has a duty to dismiss as to any defendant as soon as it finds that the evidence as to any of the defendants is insufficient to support a

3

conviction."); *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983) ("Existence of substantial reasonable doubt as to the guilt of the defendant can and should be considered by the Executive in determining whether to initiate or continue a prosecution"); *United States v. Robinson*, 774 F.2d 261, 270 (8th Cir. 1985) ("a prosecutor has the continuing duty to evaluate the sufficiency of the evidence as to the guilt of a defendant, and he must dismiss a defendant as soon as he determines that such evidence is insufficient to sustain a conviction.").

While Federal Rule of Criminal Procedure 48(a) permits the government to, with leave of court, dismiss an indictment, the Court may determine that dismissal with prejudice is warranted. *See United States v. Goodson*, 204 F. 3d 508, 514 (4th Cir. 2000); *United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995); *see also United States v. Adams*, 777 F. Supp. 3d 185, 214 (S.D.N.Y. 2025) ("Notwithstanding the significant limitations on a court's authority to deny a Rule 48(a) motion to dismiss altogether, a court retains discretion to determine whether a dismissal should be with or without prejudice."). In particular, courts have entered dismissals with prejudice based upon the determination that a dismissal without prejudice "would result in harassment of the defendant or would otherwise be contrary to the public interest." *See Adams*, 777 F. Supp. 3d at 214; *United States v. Madzarac*, 678 F. Supp. 3d 42, 46–47 (D.D.C. 2023); *United States v. Poindexter*, 719 F. Supp. 6, 11-12 (D.D.C. 1989). Moreover, the government cannot use "'Rule 48(a) to gain a position of advantage or 'to escape from a position of less advantage in which the Government found itself as the result of its own election.'" *Salinas*, 693 F.2d at 353. Because the alleged

4

violations of 18 U.S.C. § 871 in the July 10 Indictment are baseless and legally deficient on their face, the Court should not leave open the possibility that the government may seek to resuscitate them at a later date.

### A. Political Speech Made Publicly That Either Does Not Threaten Violence By Means that the Speaker Controls or that Merely Expresses Fantasy Remains Protected by the First Amendment From Criminal Liability.

Protecting political speech is a primary objective of the First Amendment. *See Mills v. Alabama*, 384 U.S. 214, 218 (1966). Because "[t]he language of the political arena … is often vituperative, abusive, and inexact[,]" the First Amendment protects "political hyperbole" and "crude offensive method[s] of stating a political opposition to the President." *Watts*, 394 U.S. at 708. Where liability is premised on "politically motivated" activities, courts must "examine critically the basis on which liability was imposed." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 915 (1982). As the Court explained, "criminal liability based upon "public[ly] address[ed] [comments] … contain[ing] highly charged political rhetoric" requires "extreme care." *Id.* at 927.

Accordingly, "'not all speech is of equal First Amendment importance,' [] and where matters of purely private significance are at issue, First Amendment protections are often less rigorous." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). "[D]issenting political speech," by contrast, is "at the First Amendment's core." *Counterman*, 600 U.S. at 81. "[C]rude" and "offensive" statements expressing "a political opposition to the President" thus receive greater First Amendment protection than similar statements made against someone who was not engaged in a similarly political position. *See Watts*, 394 U.S. at 708.

5

In addition, *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), makes it clear that the First Amendment protects speech that advocates violence, so long as the speech is not directed to inciting or producing imminent lawless action and is not likely to incite or produce such action. *See also Hess v. Indiana*, 414 U.S. 105, 107-08 (1973) (overturning disorderly conduct conviction of antiwar protestor who yelled "We'll take the fucking street later" because "advocacy of illegal action at some indefinite future time [] is not sufficient to permit the State to punish [] speech"); *Claiborne Hardware Co.*, 458 U.S. at 927 ("[M]ere *advocacy* of the use of force or violence does not remove speech from the protection of the First Amendment.") (emphasis in orig.). If challenged speech merely endorses or encourages others to engage in non-imminent violent action, the speech remains protected. *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020).

In fact, statements more alarming than the one identified in Count 1 of the July 10 Indictment have previously been determined not to constitute "true threats" subject to prosecution. Specifically, in *United States v. White*, 670 F.3d at 513, the Fourth Circuit held that statements on a public forum that a specific person should be "drug [sic] out into the street and shot" and that he "is an enemy ... of all humanity and he must be killed" "did not communicate an intent to take any action whatsoever" and thus "fell short of being true threats." *Id; see also Miselis*, 972 F.3d at 539-41 (holding that the First Amendment protects "abstract advocacy" and striking down statutory prohibitions against "encouraging," "promoting," or "urging" others to engage in violence).

Likewise, in *United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011), the Ninth Circuit held that statements on a public website that then-presidential-candidate Barrack Obama "will have a 50 cal in the head soon" and "shoot the nig," "convey[ed] no explicit or implicit threat on the part of [the defendant] that *he himself* will kill or injure Obama." *Id.* at 1115, 1119 (emphasis added).

Statements that do not express unconditional threats likewise have been found not to constitute "true threats." Specifically, in *Watts*, the Supreme Court concluded that the "conditional nature of [a] statement" made by an eighteen-year-old Vietnam draftee at a public rally supported its conclusion as a matter of law that the statement was not a true threat. 394 U.S. at 708. In that case, the defendant stated, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. The fact that the defendant's statements were conditional, made in a public forum directed at the President, and in a context of political discourse established that the statement was not a "true threat" as a matter of law. *Id.* at 707-08.[1]

---

[1] By contrast, the Fourth Circuit in *United States v. Lockhart*, 382 F.3d 447 (4th Cir. 2004), upheld an § 871 conviction based upon the statement: "if George Bush refuses to see the truth and uphold the Constitution, I will personally put a bullet in his head." While this statement was "grammatically conditional," in context it was unconditional because there were no apparent "events or circumstances [that] would prevent the threat from being carried out …." *Id.* at 452; *accord United States v. Bly*, 510 F.3d 453, 459 (4th Cir. 2007) (distinguishing *Watts* from *Lockhart*).

7

**B. Taken As True, the Allegations in the July 10, 2025, Indictment Fail To Constitute "True Threats" As a Matter of Law.**

Taking the conduct alleged in Counts One and Two as "true" for purposes of the government's Motion to Dismiss, the context and content of the charged statements establishes that they do not constitute "true threats" as a matter of law.

First, the February 18, 2025, "take the shot" statement constitutes mere encouragement that "convey[ed] no explicit or implicit threat on the part of [the defendant] that he himself will kill or injure [Trump]." *See Bagdasarian*, 652 F.3d at 1119. In other words, as the Fourth Circuit concluded in *White*, statements that merely encourage violence toward a particular victim do not constitute a "true threat" of violence by means controlled by the speaker. *White*, 670 F.3d at 513.

Likewise, the fact that the defendant posted statements on a "non-violent discussion forum [] would tend to blunt any perception that statements made there were serious expressions of intended violence." *Bagdasarian*, 652 F.3d at 1121. Such statements "amount[] more to political hyperbole of the type addressed in *Watts* than to a true threat." *White*, 670 F.3d at 513.

As the Fourth Circuit explained in *White*, the combination of "the lack" of a "direct communication … along with the fact that [the defendant's] language was clearly directed to others in the form of advocacy, makes it impossible for [the Court] to conclude that a reasonable recipient would understand [the defendant's] communications to be *serious expressions of intent to commit harm*." *Id.* at 513-14 (emphasis in original). The same is true of the February 18, 2025, statement charged in Count 1 of the July 10 Indictment.

The second statement — "I would twist the knife after sliding it into his fatty flesh" — similarly does not constitute a "true threat" because it reflects fantasy posted on a public website couched in the future conditional tense. "[T]o protect speech for its own sake, the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). Just as the statement, "I *would* marry Halle Berry" is different from the statement, "I *will* marry Halle Berry," the February 20 statement reflects a conditional fantasy – an idea – not an expression that the speaker will engage in action. As such, the charged statement is akin to the conditional statement of political hyperbole made in public to express vehement opposition to the President found not to be a "true threat" in *Watts*. *See Watts*, 394 U.S. at 707-08. The statement does not express that the speaker will himself engage in violent action, and thus does not constitute a "true threat" as a matter of law.

"[T]he primary concern of courts which have rejected dismissals without prejudice was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and 'commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" *Poindexter*, 719 F. Supp. at 11. This is a case in which the Court should "protect [Mr. Stinson] from the unwarranted or inappropriate threat of reindictment" on the charges set forth in the July 10 Indictment. *See Adams*, 777 F. Supp. 3d at 214. Because the government was fully aware of the legal precedents described above prior to the return of the July 10 Indictment, the Court should

9

dismiss these frivolous charges with prejudice, and protect Mr. Stinson from further "prosecutorial harassment" based upon protected speech. *See Adams*, 777 F. Supp.3d at 237 (granting dismissal with prejudice notwithstanding request for dismissal without prejudice).

## Conclusion

For the foregoing reasons, Mr. Stinson respectfully requests that the Court dismiss the July 10 Indictment with prejudice.

                                            Respectfully submitted,

                                            Paul Andrew Stinson

                                            By Counsel,

                                            _____/s/_____
                                            Geremy C. Kamens
                                            Va. Bar No. 41596
                                            Federal Public Defender
                                            Brittany Davidson
                                            Va. Bar No. 90660
                                            Assistant Federal Public Defender
                                            Office of the Federal Public Defender
                                            1650 King Street, Suite 500
                                            Alexandria, Virginia 22314
                                            Telephone: (703) 600-0800
                                            Facsimile: (703) 600-0880
                                            Geremy_Kamens@fd.org