**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No. 1:25-CR-209** |
| **v.** | ) | |
| | ) | |
| **PETER ANDREW STINSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT CHARGING SOLICITATION OF A CRIME OF VIOLENCE IN VIOLATION OF 18 U.S.C. § 373

This case turns on a fundamental legal distinction that determines whether speech is criminally punishable under 18 U.S.C. § 373 or constitutionally protected: the difference between abstract advocacy of violence and a specific proposal that another person engage in specific criminal conduct. The government has charged Mr. Stinson based solely on the former—which the First Amendment protects—while failing to allege the latter—which the law requires.

The horrific assassination of political organizer Charlie Kirk constitutes the most recent evidence of the increasing threat of politically-motivated violence in this country. But the prevalence of such violent acts does not alter the scope of the First Amendment's protection of speech. The central forum for the exchange of political views now occurs in "cyberspace—the 'vast democratic forums of the internet' in general, and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (citations omitted). And a foundational principle of this country is the right to engage in "vehement, caustic, and sometimes unpleasantly sharp attacks on

government and public officials." *Watts v. United States*, 394 U.S. 705, 708 (1969) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964)).

Even when expressions of "political opposition to the President" are "very crude [or] offensive," or "vituperative, abusive, and inexact," such expressions remain protected by the First Amendment. *Id.* As such, even general encouragement of others to engage in violence constitutes protected speech. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982) ("[M]ere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment.").

Criminal solicitation in violation of 18 U.S.C. § 373 is limited to (1) specific proposals for another person to commit a violent crime, such as a serious effort to hire a hitman to kill a spouse; and (2) incitement. Section 373 does not encompass mere advocacy or encouragement of violent acts. *See United States v. Hansen*, 599 U.S. 762, 782-83 (2023) (distinguishing general encouragement from speech designed to "bring about a particular unlawful act"); *United States v. Williams*, 553 U.S. 285, 298-99 (2008) (distinguishing "a proposal to engage in illegal activity" from "the abstract advocacy of illegality."); *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020) ("[B]ecause mere encouragement is quintessential protected advocacy, the Supreme Court has recognized that '[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it' under *Brandenburg*.").

Recognition of the Constitution's protection of general advocacy of violence is not to endorse such action or to encourage others to engage in similar political discourse. We can all agree that public figures across the political spectrum as well

2

as private citizens should, as a normative matter, tone down their political rhetoric and strive to engage only in civil discourse.

But authorizing a federal criminal prosecution based upon "public[ly] address[ed] [comments] … contain[ing] highly charged political rhetoric" requires "extreme care." *Claiborne Hardware Co.*, 458 U.S. at 927. This Court need not—and should not—submit to a jury the legal question of whether the charged abstract advocacy constitutes criminal solicitation. The constitutional boundaries of protected speech are matters of law.

Because Mr. Stinson's public post on a mainstream internet site stating, "Take the shot. We'll deal with the fallout[,]" did not, as a matter of law, constitute a serious or concrete proposal for another person to assassinate the President, the Court should dismiss the indictment alleging a violation of 18 U.S.C. § 373.

## I.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a defendant may "raise by pretrial motion any defense … that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Under this rule, the trial court is authorized to dismiss a criminal charge based upon legal arguments that turn on facts that the government does not dispute. *See United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011). Dismissal also is required if it is "demonstrate[d] that the allegations [in the indictment], even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

In the context of speech that provides the basis for criminal prosecution, "[w]hether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law …." *Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 108 (1990) (plurality); *accord United States v. Bly*, 510 F.3d 453, 457 (4th Cir. 2007) ("Whether a written communication contains either constitutionally protected 'political hyperbole' or an unprotected 'true threat' is a question of law and fact that we review de novo.").[1] Assuming the truth of the allegations in the indictment, "a jury [does not] decide [the] question of the application of the First Amendment." *Dennis v. United States*, 341 U.S. 494, 513 (1951), *abrogated on other grounds by Brandenburg v. Ohio*, 395 U.S. 444 (1969). On the contrary, "[w]hether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a judicial determination of the scope of the First Amendment applied to the circumstances of the case." *Id.*

---

[1] Other circuits disagree with the Fourth Circuit that the determination of whether particular speech falls within or outside First Amendment protection is a question of law. *See, e.g., United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) (holding that whether speech qualified as a "true threat" "was for the jury").

Accordingly, in *United States v. White*, 610 F.3d 956 (7th Cir. 2010), the Seventh Circuit held that an indictment sufficiently alleged solicitation of violence against a juror in violation of 18 U.S.C. § 373. Aside from the doctrinal difference with Fourth Circuit precedent, the facts of *White* are also distinguishable. In that case, the defendant created a website devoted to espousing white-supremacist views to a white supremacist audience. In addition to advocating the assassination of those associated with the federal conviction of a white supremacist leader, the defendant posted a photograph, birthdate, home address, animal name, phone number, cell number, and work number of the foreperson of the jury involved in the trial that resulted in the conviction. 610 F.3d at 957-58. The posting of such personal identifying information about a private citizen thus presented a jury question as to whether the charged statements constituted a serious solicitation of violence against the jury foreperson. *Id.* at 962.

To charge a violation of § 373, the prosecution is required to allege that Mr. Stinson (1) "solicited, commanded, induced, or otherwise endeavored to persuade"; (2) "[an]other person to commit [a] crime of violence"; (3) with the purpose of promoting or facilitating that specific crime "and under circumstances strongly corroborative of that intent." *See United States v. Cardwell*, 433 F.3d 378, 390 (4th Cir. 2005). Criminal solicitation in violation of 18 U.S.C. § 373 is therefore limited to concrete proposals that another person engage in specific conduct constituting a crime. *See United States v. Korab*, 893 F.2d 212, 215 (9th Cir.1989) (noting § 373(a) is focused upon punishing persons "who make[] a serious effort to induce another person to commit a crime of violence"); *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) (holding that solicitation "cover[s] any situation where a person seriously seeks to persuade another person to engage in criminal conduct") (citation omitted).

## II.    The Charged Conduct

The superseding indictment charges one count of solicitation of a crime of violence in violation of 18 U.S.C. § 373. ECF 45. Specifically, the superseding indictment alleges that Mr. Stinson "solicited and otherwise endeavored to persuade another person to murder or attempt to murder the President of the United States … in violation of Title 18, United States Code, Section 1114, by causing a posting on the popular social media platform Bluesky on February 18, 2025, that read: 'Take the shot. We'll deal with the fallout.'" *Id.* at 1-2.

The superseding indictment also alleges the following two circumstances as "strongly corroborative" of Mr. Stinson's intent that another person assassinate

President Trump. First, in response to the assassination attempt on President Trump on July 13, 2024, Mr. Stinson posted on Bluesky on July 13, 2024:

- "Three inches to the right, and the shot woulda gone through the eyeball. Practice. Practice. Practice. And to die in the process. If you're gonna do something big, get it right [winking emoticon]."
- "What asshole thought he was good enough to complete the mission and then so really fuck up? Shit takes skills. Practice. Etc. Most of us are not capable. As noted before, I'm not a good enough shot. Very few people are. Somebody needs to learn this lesson."
- "You want to play in the big leagues, you need the talent. Luck is not a plan.
- "Execution is critical."

The indictment also alleges that on July 14, 2024, Mr. Stinson searched for "frame by frame analysis trump shooting" using the Google search engine. And on September 15, 2024, Mr. Stinson became aware of another assassination attempt on President Trump in West Palm Beach, Florida, was therefore "aware that individuals were willing to assassinate" the President, and wrote on Bluesky, "Third time's the charm."

Second, before and after February 18, 2025, Mr. Stinson made the following statements on public microblogging sites (BlueSky and Reddit):

- On or about January 28, 2025, on Bluesky: "Somebody needs to do it. Somebody with the skills to do it right. Somebody with the experience. Somebody with the right tools. Somebody needs to get it done."
- On or about January 29, 2025, on Bluesky: "Poison, maybe. But you got to get real close."
- On or about January 31, 2025, on Bluesky: "Poison. That might be the only solution at this point. Take out 1 and 2. Got to get close to disperse. Need a plan. Anyone done this sort of work before?"
- On or about February 1, 2025, in response to a posting made by another user on the social media platform Bluesky that read, "Bluesky is an AMAZING place to announce an intention to do assassinations, keep it up[,]" Mr. Stinson caused a posting to be made to the social media platform Bluesky that read: "All in."

6

- On or about February 4, 2025, on Bluesky: "If we're planning murders, I'd like to suggest an orange one."
- On or about February 15, 2025, on Bluesky: "He who kills the President to save the country has broken no laws."
- On or about February 18, 2025, on Bluesky: "Politically the only solution is impeachment. Realistically its violence."
- On or about February 20, 2025, on Reddit: "He'd look and sound better with a big red hole in his orange head."
- On or about February 21, 2025, on Bluesky: "Can we crowd source a contract hit?"
- On or about February' 22, 2025, on Reddit: "We saw the movie. We know how it ends. In his third term. A couple of rounds to the chest cowering on the floor in the Oval Office."
- On or about February 26, 2025, on Bluesky: "One well placed shot would open up a whole new reality."
- On or about February 26, 2025, on Bluesky: "We could crowd fund the solution. People with skills could do the job."
- On or about March 4, 2025, on Bluesky: "Could we start a go fund me for a hitman?"
- On or about March 9, 2025, on Bluesky: "he needs to be luigied."

Notably absent from the government's allegations is any claim that Mr. Stinson: (1) identified a specific location, time, or means by which to target President Trump; (2) provided instructions or assistance; (3) offered payment or other inducement; (4) communicated with any specific listener about any actual plan to harm President Trump; or (5) took any action beyond posting general statements on public social media platforms.

### III. The Statement "Take the Shot" on a Popular Social Media Site Does Not Constitute a Violation of 18 U.S.C. § 373 as a Matter of Law.

#### A. Criminal Solicitation of a Violent Felony in Violation of 18 U.S.C. § 373 Requires a Specific Proposal That Another Person Engage in Specific Criminal Conduct or Speech Constituting Incitement.

Section 373 of Title 18 prohibits anyone from "solicit[ing], command[ing], induc[ing], or otherwise endeavor[ing] to persuade" another person to engage in a crime of violence "under circumstances strongly corroborative of that intent." § 373. The text, precedent, and legislative history of this offense all limit its scope to: (a) specific and serious proposals that another person engage in a specific violent crime, and (b) incitement, and exclude mere speech that encourages violence. Because Mr. Stinson's posts on popular social media sites constituted mere encouragement of violence, not a specific proposal for another person to commit a specific crime or incitement, his speech falls outside the scope of § 373 as a matter of law.

To determine what constitutes a violation of § 373, start with the following apparent contradiction: "[c]riminal solicitation is the intentional encouragement of an unlawful act[,]" *United States v. Hansen*, 599 U.S. 762, 771 (2023), but "[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). Reconciliation of these statements begins with the principle that "the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct." *Id.* at 253.

As discussed below, criminal solicitation in violation of 18 U.S.C. § 373 is limited to: (1) specific proposals to partner with or hire another person to commit a

crime, usually accompanied by an inducement; and (2) incitement. It excludes mere speech that encourages violent acts, but does not constitute incitement.

### 1. Specific Proposals to Partner With or Hire Another to Commit a Violent Crime.

Specific proposals to hire or partner with another person to commit a specific violent crime represent the vast majority of conduct prohibited by § 373. Such proposals do not receive First Amendment protection.

The Supreme Court in *United States v. Williams*, 553 U.S. 285 (2008), recognized the "important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality." *Id.* at 298-99. In upholding a statute that prohibited the "advertis[ing], promot[ion], present[ation], distribut[ion], or *solicit[ation]*" of child pornography, the Court explained that "the statute's string of operative verbs … is reasonably read to have a transactional connotation." *Id.* at 294 (emphasis added). "[S]oliciting," the Court noted, is usually understood as a "step[] taken in the course of an actual or proposed transfer …." *Id.* Moreover, it concluded that "the term 'promotes' does not refer to abstract advocacy, such as the statement, 'I believe that child pornography should be legal,' or even 'I encourage you to obtain child pornography.'" *Id.* at 300. Instead, the statute was constitutional because it narrowly prohibited "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer." *Id.*

The Court thus distinguished between a specific proposal to engage in a criminal transaction involving a specific item of contraband from abstract advocacy of conduct that would constitute the crime generally. The key to this specialized

meaning of "solicitation" is the requirement that it involve a serious and specific proposal to partner with or hire another to engage in a criminal transaction. *See Hansen*, 599 U.S. at 781-82 (rejecting overbreadth challenge because the statute only prohibited solicitation of "specific acts known to violate federal law" and the "defendant intend[ed] to bring about a specific [unlawful] result").

In sum, "[s]peech intended to bring about a *particular* unlawful act" is subject to prohibition, while speech that generally encourages such unlawful acts is not. *Id.* at 783 (emphasis added). Put differently, "solicitation" of another to commit a crime of violence is limited to a specific proposal that another "engage in specific [unlawful] conduct." *Id.* at 772 (quoting Model Penal Code § 5.02(1)); *see also United States v. Medina-Campo*, 714 F.3d 232, 237 (4th Cir. 2013) (same).

Criminal solicitation in violation of § 373 thus principally prohibits speech that amounts to a verbal act designed to instigate a criminal transaction resulting in a specific violent crime, typically through the use of an inducement. As the Department of Justice noted in a 1997 Report, "[i]n the prototypical solicitation case, the 'persuasion' is accompanied by some form of inducement, such as a money payment, or a threat. Such a case raises no First Amendment issues ...." Department of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which Its Dissemination is Controlled by Federal Law, and the Extent to Which Such Dissemination May Be Subject to Regulation Consistent with the First Amendment to the United States Constitution* 12 (April 1997) ("DOJ Report").

The legislative history of § 373 confirms this understanding. As the Senate Report accompanying § 373 observed, "[s]olicitation involves a hiring or partnership arrangement, designed to accomplish a specific action in violation of law, where the communication is an essential link in a direct chain leading to criminal action." S. Rep. N. 98-225, 98th Cong. 1st Sess., 1984 U.S.C.C.A.N. 3182, 3488 (1983). Accordingly, "the section rests primarily on words of instigation to crime …, not advocacy of ideas that is protected by the First Amendment right of free speech." *Id.*

The Senate Report accompanying precursor legislation similarly explained, "[t]ypical cases under [federal solicitation] would include, for example, a potential heir soliciting the murder of a relative from whom he expects to inherit property, a person importuning another to commit arson on his business premises so that he can collect insurance, or an organized crime boss directing a subordinate to kill a rival gang leader." S. Rep. No. 97–307, 97th Cong. 1st Sess. 181 (1981). As noted above, such proposals to partner with or hire someone to commit a violent crime are equivalent to an "offer[] to engage in [an] illegal transaction[]," and receive no First Amendment protection. *Williams*, 553 U.S. at 297.

*United States v. Barefoot*, 754 F.3d 226 (4th Cir. 2014), is an example of this type of solicitation. In *Barefoot*, the defendant repeatedly discussed with another person—with whom he had already helped to commit a murder—that he was planning to blow up a specific courthouse to "get back" at the local sheriff, provided a specific plan to use a canoe or one-man boat to travel down a river near the courthouse and plant an explosive, stated that he wanted someone to commit the crime, already

possessed a one-man boat, and obtained explosives a short time after he solicited the crime. *Id.* at 235-40. These facts thus included a detailed and specific plan to commit a specific crime of violence against a specific target by specific means that were communicated in private to someone with whom the defendant had previously committed a murder.

### 2. Incitement

*Brandenburg v. Ohio*, 395 U.S. 444 (1969), makes clear that the First Amendment protects speech that advocates violence, so long as the speech is not directed to inciting or producing imminent lawless action and is not likely to incite or produce such action. *Id.* at 447; *see also Hess v. Indiana*, 414 U.S. 105, (1973) (overturning disorderly conduct conviction of antiwar protestor who yelled "We'll take the fucking street later"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982) ("[M]ere *advocacy* of the use of force or violence does not remove speech from the protection of the First Amendment.") (emphasis in orig.). In other words, the First Amendment protects speech – even speech calling for the assassination of political figures -- unless it is designed to instigate imminent lawless action and is likely to induce such imminent violence. *Brandenburg*, 395 U.S. at 447.

Speech that is directed at encouraging imminent lawless action and is likely to produce such action conceivably could constitute criminal solicitation in violation of § 373, even in the absence of an inducement to engage in a criminal transaction or partnership. Specifically, the Senate Report accompanying § 373 noted, "a person who shouted encouragement to a mob surrounding a jail to lynch a prisoner might well be

found to have intended that other persons engage in violent criminal conduct." 1984 U.S.C.C.A.N. at 3488.[2]

### 3. Mere Speech Encouraging Violence

As the Department of Justice acknowledged in its 1997 Report, "insofar as Congress also intended § 373 to cover cases of 'persuasion' taking the form of mere advocacy or urging of unlawful action – without any threat or inducement – many such cases could be subject to significant First Amendment constraints under the *Brandenburg* doctrine." DOJ Report at 12. Speech that merely encourages violence, but that does not satisfy the *Brandenburg* test, remains protected by the First Amendment.

Although the Supreme Court stated in *Hansen* that "[c]riminal solicitation is the intentional encouragement of an unlawful act[,]" 599 U.S. at 771, it also made clear that "encouragement" sufficient to constitute criminal solicitation is limited to a "specialized, criminal-law sense" of the word rather than its ordinary meaning. *Hansen*, 599 U.S. at 774. Indeed, the Senate Report accompanying precursor legislation to § 373 observed that "[t]he words used to describe the type of conduct required to violate this section are designed to limit it to actual instigation. Thus, words such as 'counsels,' 'encourages,' and 'requests' have been rejected because they suggest equivocal situations too close to casual remarks." S. Rep. No. 97–307, 97th Cong. 1st Sess. 182 (1981).

---

[2] Counsel is unaware, however, of any previous prosecution under an "incitement" theory of solicitation in violation of 18 U.S.C. § 373.

Accordingly, if challenged speech merely endorses or encourages others in the abstract to engage in violent action, the speech remains protected. *Miselis*, 972 F.3d at 536 ("[B]ecause mere encouragement is quintessential protected advocacy, the Supreme Court has recognized that '[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it' under *Brandenburg*."). As the Fourth Circuit explained in *Miselis* in the context of a federal statute that prohibited "encouragement" of a riot, there are an "abundance of hypothetical efforts to persuade that aren't likely to produce an imminent riot." *Id.* at 536. For that reason, the Court struck statutory language barring anyone from "encouraging" a riot as unconstitutionally overbroad.

Moreover, unlike speech involving a private person or matter, "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quoting *Claiborne Hardware*, 458 U.S. at 913). Indeed, "not all speech is of equal First Amendment importance,'" [] and where matters of purely private significance are at issue, First Amendment protections are often less rigorous." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). "[D]issenting political speech," by contrast, is "at the First Amendment's core." *Counterman v. Colorado*, 600 U.S. 66, 81 (2023). "[C]rude" and "offensive" statements expressing "a political opposition to the President" thus receive greater First Amendment protection than similar statements made against someone who was not engaged in a similarly political position. *See Watts*, 394 U.S. at 708.

14

Finally, speech made to a general audience receives greater First Amendment protection than speech made privately to a particular individual. For example, in *Thomas v. Collins*, 323 U.S. 516 (1945), the Supreme Court vacated a contempt citation issued against a labor organizer for both generally inviting a group of non-union laborers to join a union, and specifically soliciting an individual worker to join the union. *Id.* at 540-41. Although the Court declined to address whether the individual solicitation could be sanctioned as a violation of a judicial restraining order, it held the "general invitation" was "clearly … immune" from regulation due to the First Amendment. *Id.* at 541; *accord Zant v. Stephens*, 462 U.S. 862, 882 (1983) (describing holding of *Thomas v. Collins*). Accordingly, as one treatise recognized over 150 years ago, an overly broad construction of the crime of solicitation to encompass mere encouragement of unlawful acts would "greatly infringe[]" the "necessary freedom of speech and of the press." 2 Francis Wharton, A Treatise on the Criminal Law of the United States 850 (7th ed. 1874).

Construing § 373 to prohibit general online advocacy of violence thus would potentially criminalize protected political speech about foreign leaders. For instance, statements advocating the overthrow of authoritarian regimes — which historically has been a central feature of American foreign policy discourse — could be construed as encouragement or solicitation of violence against a foreign leader in violation of 18

U.S.C. § 1116, which prohibits U.S. citizens from killing or attempting to kill internationally protected persons including foreign government officials.

The text, precedent, and legislative history of § 373, as well as cornerstone First Amendment principles, all confirm that "solicitation" in violation of the statute does not encompass abstract statements advocating violence against political leaders. But even if the text of § 373 could be considered ambiguous, the canon of constitutional doubt would require construing the statute narrowly to exclude such statements. *See Stern v. Marshall*, 564 U.S. 462, 477 (2011) (noting that courts "construe federal statutes so as 'to avoid serious doubt of their constitutionality'").

### B. The Charged Statement Does Not Fit Any Category Subject to Prohibition Under § 373

#### 1. The Superseding Indictment Fails to Allege a Specific Proposal to Partner With or Hire Another to Assassinate the President.

The superseding indictment does not allege a specific or serious proposal to engage in a criminal transaction to hire or partner with another person to assassinate President Trump. Indeed, nothing like the circumstances in *Barefoot*, 754 F.3d at 235, are alleged in this case. The superseding indictment does not allege that Mr. Stinson proposed a specific plan, seriously offered inducements such as money or threats to instigate someone to commit the crime, directly communicated in private with a known criminal associate, or acquired weapons or tools or information that would be of assistance in carrying out the offense of assassinating the President.

The government has alleged only that Mr. Stinson posted on the popular social media site Bluesky the words "Take the shot," and also made other statements on

Bluesky and Reddit indicating his opposition to President Trump and support of violent action toward him. No actual concrete or specific proposal that someone else engage in specific criminal conduct is alleged. Put differently — taking the allegations in the superseding indictment as true for purposes of this motion — it alleges that Mr. Stinson generally advocated without further specificity that someone should shoot President Trump, not a specific and serious proposal that any particular person engage in "a particular unlawful act." *Hansen*, 599 U.S. at 783.

Even considering the alleged statements in the superseding indictment collectively, they fail to transform abstract advocacy into a specific proposal to partner with or hire someone to assassinate President Trump. The repetitive general statements made online over the course of months demonstrate consistent political views, not evolving criminal planning. An alleged violation of § 373 requires a specific proposal to commit specific criminal conduct, not passionate repetition of general sentiments. Even Mr. Stinson's most provocative statements, such as his reference to crowdfunding for a "hitman," lack the essential element of serious or specific direction to identifiable individuals and remain in the realm of abstract or satirical political expression of vehement opposition to President Trump.

In sum, the charged statement on a mainstream public microblogging site charged by the government as a prohibited solicitation — "Take the shot. We'll deal with the fallout[.]" — does not contain any specificity as to when, how, or who is to engage in the charged crime of violence. Indeed, it is no more specific than the

statement, "I encourage you to obtain child pornography," that the Supreme Court provided as an example of protected abstract advocacy in *Williams*. 553 U.S. at 300.

### 2. The Superseding Indictment Does Not Allege Incitement.

In this case, the charged conduct not only receives heightened First Amendment protection as political speech made to a general audience, it also fails to satisfy the *Brandenburg* test. "[S]olicitation can be constitutionally punished only when the communication is so close, direct, effective, and instantaneous in its impact that it is part of the action. The speaker must, in effect, be an agent of the action." *United States v. Kelner*, 534 F.2d 1020, 1027 n.9 (2d Cir. 1976) (quoting T. Emerson, The System of Freedom of Expression 404-05 (1970)). As the DOJ Report acknowledged, cases that only involve alleged efforts to persuade without any other inducement are limited by *Brandenburg*, which bars the government from prohibiting advocacy of violence or violations of law unless such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce that action. 395 U.S. at 447.

For example, if a person posted on a public site, "Someone should rob the bank on King Street," such a statement would constitute abstract advocacy. On the other hand, if in the midst of a power outage and general looting, a person encouraged a crowd on King Street to break into and steal from a particular bank, such conduct may support a solicitation charge.[3]

---

[3] Even more specifically in the context of public statements by President Trump, his remarks that former Representative Liz Cheney "should have guns trained on her face," or that former Chairman of the Joint Chiefs of Staff Mark Milley "deserves to

18

Taking the conduct alleged in Count One as "true" for purposes of this Motion to Dismiss, the charged conduct fails to allege a violation of 18 U.S.C. § 373 because it consists of "mere advocacy or urging of unlawful action – without any threat or inducement," DOJ Report at 12, that was not directed to inciting or producing imminent attempts to assassinate President Trump and was not likely to incite or produce such action. *See Brandenburg*, 395 U.S. at 447. In particular, the charged statement was not directed at the instigation of imminent lawless action because it contained no specificity as to timing, location, or method. Nor was it likely to produce such action because, unlike solicitation of a crowd "surrounding a jail to lynch a

---

be put to death," contained no inducements, did not constitute specific proposals that another person commit a crime of violence, and were (arguably) not likely to incite or produce imminent violent actions against former Representative Cheney or General Milley. Such statements thus likely constitute protected general advocacy that are not subject to criminal prohibition. *See* David A. Graham, *Trump Suggests Training Guns on Liz Cheney's Face*, The Atlantic (Nov. 1, 2024), available at: https://www.theatlantic.com/politics/archive/2024/11/trump-liz-cheney-war/680485/; Brian Klaas, *Trump Floats the Idea of Executing Joint Chiefs Chairman Milley*, The Atlantic (Sep 25, 2023), available at: https://www.theatlantic.com/ideas/archive/2023/09/trump-milley-execution-incitement-violence/675435/.

By contrast, President Trump's statement at a political rally in 2016 that attendees should "[k]nock the crap out of [protesters]" in the audience, and he would "cover their legal fees," could constitute a specific inducement for a specific criminal act, and would therefore likely qualify for submission of appropriate criminal solicitation charges to a jury. *See* Phillip Bump, *Donald Trump reverses course on paying legal fees for man who attacked protester. But could he do it?*, Wash. Post (Mar. 15, 2016). Similarly, his statements on January 6, 2021, exhorting attendees at a political rally to immediately go to the Capitol, where legislators were certifying election results, and "fight like hell" could constitute solicitation of specific criminal conduct akin to urging a crowd "surrounding a jail to lynch a prisoner." *See Thompson v. Trump*, 590 F. Supp. 3d 46, 115 (D.D.C. 2022) ("It is plausible that those words were implicitly 'directed to inciting or producing imminent lawless action and [were] likely to produce such action'"). An indictment charging such a statement as the basis for a charge of criminal solicitation would likewise likely require submission to a jury.

prisoner," such a general statement on a public social media site lacked the immediacy required to satisfy *Brandenburg*. Because establishing a violation of § 373 "depends so crucially upon [] a specific identification of fact," namely, a serious and specific proposal designed to instigate the hiring or partnering with another person to commit a violent felony, or incitement satisfying *Brandenburg*, the failure of the indictment to allege such facts is "fatally defective." *Russell v. United States*, 369 U.S. 749, 764 (1962).

### 3. Speech is Not Subject to Prohibition Because of the Risk that a Mentally-Disturbed Listener May Take Violent Action.

"Listeners' reaction to speech is not a content-neutral basis for regulation." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992); *accord Nwanguma v. Trump*, 903 F.3d 604, 610 (6th Cir. 2018) ("the fact that audience members reacted by using force does not transform Trump's protected speech into unprotected speech. The reaction of listeners does not alter the otherwise protected nature of speech."). Indeed, "if speech may be suppressed whenever it might inspire someone to act unlawfully, then there is no limit to the State's censorial power." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 580 (2001) (Thomas, J., concurring in part).

Accordingly, as the Fourth Circuit explained in *Balogh v. Virginia*, restricting speech based upon how an audience reacts is "one of the most persistent and insidious threats to [F]irst [A]mendment rights." 120 F.4th 127, 135 (4th Cir. 2024) (citation omitted). The government therefore cannot "'silence[] particular speech or a particular speaker due to an anticipated disorderly or violent reaction of the audience.'" *Id.*

The possibility that a listener may engage in violent action does not transform protected advocacy into criminal incitement. *See Nwanguma*, 903 F.3d at 610. Mr. Stinson's alleged "aware[ness] that individuals were willing to assassinate President Donald J. Trump and had attempted to do so," ECF 45 at 2, at the time that he made the challenged post on Bluesky thus does not provide a basis for prohibiting his speech.

## Conclusion

The government's construction of 18 U.S.C. § 373 would transform routine political hyperbole into a federal felony. Online forums featuring offhand statements such as, "someone should take out [Politician X]," while offensive, remain outside of the scope of § 373 and within the protection of the First Amendment. Because the superseding indictment fails to allege that Mr. Stinson made any specific proposal to partner with or hire another person to assassinate President Trump—as opposed to engaging in abstract and general political advocacy— or engaged in incitement, it fails to state an offense and must be dismissed as a matter of law.

Respectfully submitted,

Peter Stinson

By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender

21

Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org