IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:25-cr-00209 |
| v. ) | Hon. Anthony J. Trenga |
| ) | Motion Hearing: Oct. 17, 2025 |
| PETER ANDREW STINSON, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF MOTION *IN LIMINE*
TO PRECLUDE USE OF TERM AND TESTIMONY REGARDING "ANTIFA"**

The government seeks to brand Mr. Stinson with a label that the current administration has explicitly designated as "domestic terrorism" – not because this label proves intent, but because it is inflammatory and politically divisive. The government's Response (ECF 91) also misstates the defense's argument. Mr. Stinson is *not* asking that the Court preclude the government from referring to or soliciting testimony from witnesses about Mr. Stinson's posts about fascism or calling President Trump a fascist.[1]

Mr. Stinson's position is narrow: the Court should preclude the government from referring to or soliciting testimony that Mr. Stinson is a member of ANTIFA

---

[1] Much of the government's response argues that it should be permitted to introduce both evidence about Mr. Stinson being a member of ANTIFA and his antifascist beliefs. *See, e.g.*, Gov. Resp. at 7 ("the court should find that the defendant's affiliations with ANTIFA *and* posts about his anti-fascist beliefs are highly probative of his intent under Rule 401.") (emphasis added). Mr. Stinson's abstract political beliefs supporting democracy and opposing fascism are protected by the First Amendment and are not a basis for finding criminal intent. *See Dawson v. Delaware*, 503 U.S. 159, 165-67 (1992) (holding that defendant's First Amendment rights were violated by admission of membership in white supremacist prison gang to establish defendant's abstract beliefs).

1

because that label has no relevance to the charged offense and purported affiliation with such a politically polarizing term could lead a jury to find guilt by mere association. Indeed, the government's argument conflates motive (why Mr. Stinson might want President Trump dead) with intent (whether he seriously proposed that another person assassinate President Trump). While Mr. Stinson's antifascist posts and purported affiliation with ANTIFA demonstrate political opposition against President Trump, none of this evidence tends to prove that he seriously intended anyone to act on his offhand post to "Take the shot. We'll deal with the fallout."

Finally, it is important to note that, in addition to the September 2025 Executive Order declaring ANTIFA as a domestic terrorist organization, as of October 9, 2025, a Rutgers University Professor who taught courses on antifascism and published a book entitled "Antifa: The Anti-Fascist Handbook" was targeted as a member of ANTIFA and fled the United States after receiving death threats.[2] Although "ANTIFA" represents an ideology more than an organized political organization, it has been reviled by both the White House and right wing media in the United States as associated with violent extremist groups. Accordingly, allowing the government to classify Mr. Stinson as a member of ANTIFA or solicit testimony from its witnesses stating as much would be far more prejudicial than probative and thus violate Federal Rule of Evidence 403.

---

[2] *See The Washington Post*, Antifa expert at Rutgers University says he is moving to Spain because of death threats, available at https://wapo.st/4h6SkYW (published Oct. 9, 2025).

## I. The Government Seeks To Prove Guilt By Association.

The government first argues that Mr. Stinson's association and affiliation with ANTIFA is probative of his intent to solicit a serious proposal for someone to assassinate the President. *See, e.g.*, Gov. Resp. 7, 8, 9, 10 (repeated statements about Mr. Stinson's "associations" or "affiliation" with ANTIFA" and stating that he described himself as a member of ANTIFA). In making that argument, the government implies that "ANTIFA" is a violent extremist group. But the "U.S. antifa" movement "lacks a unifying organizational structure or detailed ideology[.]" Congressional Research Service, *Are Antifa Members Domestic Terrorists? Background on Antifa and Federal Classification of their Actions* 1 (June 9, 2020).[3] While "[s]ome members are willing to commit crimes, some violent, to promote their beliefs, [] much antifa activity involves nonviolent protest such as hanging posters, delivering speeches, and marching." *Id.* "As a core purpose, antifa groups track and react to the activities of individuals or groups they see as advocating fascist views, such as neo-Nazis, racist skinheads, white supremacists, and white nationalists." *Id.*

Mr. Stinson's online statements purporting to identify as ANTIFA merely reflect his political opposition to fascism. In fact, no evidence exists that he is actually associated or affiliated with any organized ANTIFA group. *Cf.* Gov't Resp. at 4-5 (citing posts in July and November 2024 where Mr. Stinson says "I am antifa" and "#IAmAntifa" and February 2025 where he states "We are antifa"). Being antifascist

---

[3] https://www.congress.gov/crs_external_products/IF/PDF/IF10839/IF10839.3.pdf

is a political ideology; just because someone holds antifascist views does not mean they are also members of an organized ANTIFA group.

This is evident from Mr. Stinson's own social media posts. As the government stated in their response, he self-identified as "Virgniaantifa" in his Bluesky profile and on that account, made the following posts:

- July 15, 2024: "Time to start reading about fascism and authoritarianism and figuring out how to combat the scourge if we don't win at the ballot box in November. We must start deciding how we will respond. I am **antifa**."

- November 7, 2024: "#resist. #IAm**Antifa**."

- February 2, 2025: "Everyone has a story. Everyone is dealing with shit. I don't give a shit about fascists. To everyone else, stick together. We are **antifa**. Together we can kill the fascism."

*See* Gov. Resp. at 4-5 (emphasis in original).

None of these posts are probative as to whether Mr. Stinson intended to seriously propose to hire or partner with someone to assassinate President Trump. Millions of Americans opposed to fascism do not seriously solicit political assassination. The ANTIFA label adds nothing to establish proof of serious intent; it only suggests that because Mr. Stinson identified with a movement that the government associates with violence, he must have seriously intended violence here. This is why the Court should exclude evidence of ANTIFA from the trial.

In other words, the government's effort to paint Mr. Stinson as associated or affiliated with ANTIFA constitutes a transparent effort to encourage a jury to find guilt by association. The government must prove Mr. Stinson intended to seriously solicit assassination through his specific words and actions – not through a label that

4

suggests he subscribes to violence because others using that label have committed violence. As noted in motion to preclude such evidence, courts have prohibited precisely that type of association evidence. *See, e.g.*, Def. Mot. (ECF 78) at 4-5.

While the government claims that precluding it from referring to or eliciting testimony about Mr. Stinson as a member of ANTIFA would hinder its ability to present its case, nothing precludes it from introducing evidence of Mr. Stinson's animosity toward President Trump and his adminsitration's policies.[4] The government remains free to introduce evidence that Mr. Stinson characterized President Trump as a fascist. *See, e.g.*, Gov. Resp. at 6 (showing that President Trump is a fascist, that he is committed to fighting fascism, and his statement that "Fascism always dies a violent death"). In sum, the government undoubtedly can elicit testimony at trial that Mr. Stinson characterized President Trump as a fascist without using a politically divisive term for an improper purpose.

## II. ANTIFA Evidence is Highly Prejudicial and Minimally Probative.

The government claims that because Mr. Stinson has referred to himself as affiliated with ANTIFA, evidence of such statements would not be unduly prejudicial. *See* Gov. Resp. at 9. That position is disingenuous. As stated above, the government acknowledges that it seeks to describe Mr. Stinson as being affiliated with or associated with ANTIFA to effectively convey that he is affiliated with a violent extremist group. This is best exemplified in their own hypothetical: "The defendant's

---

[4] This is subject to the defense's response to the government's motion *in limine*. *See generally*, Def. Resp. (Dkt. No. 74).

argument would be akin to saying that an individual's self-proclamation as a member of ISIS is inadmissible because the government didn't have proof that the defendant had formally registered as an ISIS member." *See id.* at 9.

A defendant who self-describes as being a member of a terrorist organization is different than Mr. Stinson self-describing that he is antifascist. ISIS is a formally designated foreign terrorist organization with established membership structures, training camps, operational command, and a lengthy record of carrying out gruesome and violent attacks on civilian targets.

Mr. Stinson's "abstract beliefs" opposing fascism, by contrast, does not itself constitute proof of intent to solicit the murder of President Trump. In other words, the fact that someone subscribes to an antifascist ideology does not mean the person "endorses the killing of an[] identifiable group" or even an individual fascist. *See Dawson*, 503 U.S. at 166 (noting that government failed to adduce evidence that membership in Aryan Brotherhood was linked to intent to kill particular victim). As such, evidence of Mr. Stinson's purported association with ANTIFA would "prove[] nothing more than [his] abstract beliefs[.]" *Id.* at 167.

The government also argues that *United States v. Rui Jiang* supports its position because in that case, the government was permitted to describe the document found in Mr. Jiang's apartment as "The Final Letter" – which was his own title – verses "Manifesto" – which was the government's characterization of the letter. *See* Gov. Resp. at 10. But that's not what Judge Alston held in *Jiang*. The court held that "manifesto" was a "a provocative term in the context of mass shootings, carrying

6

strong connotations" and that "'manifesto' effectively makes a factual determination for the jury regarding Defendant's intent." *See* 1:24-cr-65, Dkt. No. 42 at 32. Because of that prejudicial effect, the court held that "[t]he parties should refer to the document with non-prejudicial terms and phrases, such as Defendant's writings, musings or the 'September 2023 Letter,' or using terms and phrases that the Defendant used himself, such as 'The Final Letter.'" *Id.* at 32-33. That is exactly what Mr. Stinson is requesting from the Court here: that the government can argue or introduce evidence that Mr. Stinson characterized President Trump as a fascist, but it should not be permitted to use a politically charged term that makes a factual determination for the jury.

* * * * *

The government's response reveals that it seeks to introduce "ANTIFA" as evidence precisely because it is prejudicial – because it may associate Mr. Stinson with violence and extremism in the jury's mind. But Rule 403 prohibits exactly this: evidence whose impact derives from inflammatory associations rather than logical relevance. The government has ample direct evidence of Mr. Stinson's opposition to President Trump and characterization of him as a fascist. It does not need – and should not be permitted – to inflame the jury with a politically charged label that the current administration has designated as terrorism.

Date: October 16, 2025                                Respectfully submitted,

**PETER ANDREW STINSON**

By Counsel,

_____/s/_____
Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org
Brittany_Davidson@fd.org