**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Case No. 1:25-cr-209** |
| **v.** | ) | **Honorable Anthony J. Trenga** |
| | ) | **Trial: October 27, 2025** |
| | ) | |
| **PETER ANDREW STINSON,** | ) | |
| | ) | |
| Defendant. | | |

**DEFENDANT'S OBJECTION TO THE GOVERNMENT'S PROPOSED FIRST**
**AMENDMENT INSTRUCTION**

The government's proposed instruction, entitled "Speech that References Politics Does Not Insulate Crime from Prosecution," attached as Exhibit 1, should be rejected as misleading, confusing, and largely unrelated to the factual circumstances in this case. It also improperly quotes lengthy passages from an appellate decision, *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233 (4th Cir. 1997), that addressed entirely distinct facts and an aiding and abetting theory of liability. As the Fourth Circuit has repeatedly emphasized, its "opinions are not jury instructions, nor are they meant to be." *Noel v. Artson*, 641 F.3d 580, 588 (4th Cir.2011); *accord Finch v. Covil Corp.*, 972 F.3d 507, 513 (4th Cir. 2020); *Justice v. Dennis*, 793 F.2d 573, 576 (4th Cir. 1986). Accordingly, "appellate opinions cannot mechanically supply jury instructions." *Noel*, 641 F.3d at 588.

1

I.    **The First Amendment Protects Political Discourse Merely Advocating and Encouraging Others to Engage in Violence Unless It is Directed and Likely to Produce Imminent Lawless Action.**

A. *Brandenburg*'s **Rule Distinguishes "Mere" Advocacy From Incitement.**

Under British law prior to the American Revolution, it was a crime to "compass or imagine" the King's death. *See Watts v. United States*, 394 U.S. 705, 709 (1969) (Douglas, J., concurring). As our Founders recognized, however, under a representative government, the "concept of treason as compassing or imagining a ruler's death was no longer fitting." *Cramer v. United States*, 325 U.S. 1, 21 (1945). Consequently, "[t]he idea that loyalty will ultimately be given to a government only so long as it deserves loyalty and that opposition to its abuses is not treason has made our government tolerant of opposition based on differences of opinion that in some parts of the world would have kept the hangman busy." *Id.*

The rule announced by the Supreme Court in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), reflects this tolerance. Specifically, *Brandenburg* prohibits the government from prohibiting "advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. As such, "*mere advocacy*, unrelated to its tendency to produce forcible action[,]" remains protected by the First Amendment. *Id.* at 448 n.2 (emphasis added); *see also id.* at 449 (striking statute that "purports to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others to advocate the described type of action").

2

The rule announced in *Brandenburg* thus "distinguishes between 'mere advocacy' and 'incitement to imminent lawless action[.]'" *Rice*, 128 F.3d at 264. Although the *Brandenburg* opinion *also* drew a distinction "between 'the mere abstract teaching … of the moral propriety or even more necessity for a resort to violence' on the one hand, and the 'prepar[ation] [of] a group for violent action and steeling it to such action' on the other[,]" that does not mean that "preparation and steeling" consisting of "*advocacy*—speech that is part and parcel of political and social discourse," can be prohibited in the absence of evidence of "incitement.'" *Id.*

For example, in *Hess v. Indiana*, 414 U.S. 105 (1973), the Supreme Court considered a disorderly conduct conviction arising from an anti-war demonstration in which protesters "moved onto a public street and blocked the passage of vehicles." *Id.* at 106. When police arrived, the protesters moved to allow traffic – but one protester, Hess, yelled, "We'll take the fucking street later." *Id.* at 107. The Supreme Court concluded that this statement "at worst, [] amounted to nothing more than advocacy of illegal action at some indefinite future time." *Id.* at 108. And in the absence of "evidence or rational inference from the import of the language[] that his words were intended to produce, and likely to produce, imminent disorder, those words could not be punished by the State[.]" *Id.* at 109.

The statement at issue in *Hess* was not particularly "theoretical" (other than as to timing), given that it could be construed as advocating that the protestors block a specific street. Nor has the Supreme Court narrowed *Brandenburg* to advocacy only in a "theoretical" sense. After all, in *United States v. Williams*, 553 U.S. 285 (2008),

the Court observed that the statement, "I encourage you to obtain child pornography" constituted protected advocacy. *Id.* at 300. Likewise, the Supreme Court noted in *Counterman v. Colorado*, 600 U.S. 66 (2023), that "'mere advocacy' of illegal acts" "fall[s] within the First Amendment's core." *Id.* at 76 (citing *Brandenburg*).

"Mere" advocacy thus is not limited to statements constituting "theoretical" justifications for violations of law, but instead refers to words that have no other legal significance other than to encourage another to violate the law. As the Fourth Circuit explained in *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020), "we've understood *Brandenburg's* protection to be limited to *mere* or 'abstract' advocacy …. [as distinguishable from speech] such as that which 'constitutes … aiding and abetting of criminal conduct[.]" *Id.* at 533 (emphasis in orig.).

In other words, speech does not constitute "mere or 'abstract' advocacy" if "the speaker's words were 'intended' (not just likely) to produce imminent disorder[,]" *Counterman*, 600 U.S. at 76, or if the communication helps or assists another person to commit a crime regardless of "whether it's directed and likely to produce imminent lawlessness." *Miselis*, 972 F.3d at 533. Speech that actually assists another to commit a crime – such as a how-to guide to committing murder – is thus categorically excluded from First Amendment protection. *Rice*, 128 F.3d at 249 ("[T]his detailed, focused instructional assistance to those contemplating or in the throes of planning murder is the antithesis of speech protected under *Brandenburg*.").

### B. To Categorically Fall Outside First Amendment Protection, Speech Must Have Some Independent Legal Significance.

The foundation for excluding speech that has independent legal significance

beyond mere persuasion or advocacy from First Amendment protection was established by the Supreme Court's opinion in *Giboney v. Empire Storage and Ice Co.*, 336 U.S. 490 (1949). In *Giboney*, the Court upheld the constitutionality of a state law that prohibited and enjoined a union from picketing a company that refused "to agree to stop selling ice to nonunion peddlers." *Id.* at 492. The company sought an injunction on the ground that state antitrust law prohibited it from distinguishing who it would sell to based on union membership. *Id.* at 493. The company thus faced the choice of either complying with state law -- and likely going out of business because of the picketing – or complying with the union's demand, and thereby violating state antitrust law. *Id.*

Under these circumstances, the Court concluded that the union's activities – including the picketing – "was in violation of [the state's] valid [antitrust] law." *Id.* at 498. In other words, the picketing constituted "*more* than exercising a right of free speech[,]" but represented the union's "exercising [of] their economic power together with that of their allies to compel [the company] to abide by union rather than by state regulation of trade." *Id.* at 503 (emphasis added).

In *Rice*, the Fourth Circuit extensively quoted from *Giboney* as supporting its conclusion that "while even speech advocating lawlessness has long enjoyed protections under the First Amendment, it is equally well established that speech which, in its effect, is tantamount to legitimately proscribable nonexpressive conduct may itself be legitimately proscribed, punished, or regulated incidentally to the constitutional enforcement of generally applicable statutes." 128 F.3d at 243. Speech

5

that unlawfully restrains trade, or constitutes aiding and abetting, thus is excluded from First Amendment protection.

In the context of criminal solicitation, the line between "mere advocacy" and speech that is "tantamount to legitimately proscribable nonexpressive conduct" is most clearly identifiable in the difference between public expression that has no transactional or aiding and abetting component and private proposals to commit a crime for private gain. As the Supreme Court noted in the context of a statute prohibiting candidates from promising anything of value in return for votes:

> Although agreements to engage in illegal conduct undoubtedly possess some element of association, the State may ban such illegal agreements without trenching on any right of association protected by the First Amendment. The fact that such an agreement necessarily takes the form of words does not confer upon it, or upon the underlying conduct, the constitutional immunities that the First Amendment extends to speech. Finally, while a solicitation to enter into an agreement arguably crosses the sometimes hazy line distinguishing conduct from pure speech, such a solicitation, even though it may have an impact in the political arena, *remains in essence an invitation to engage in an illegal exchange for private profit*, and may properly be prohibited.

*Brown v. Hartlage*, 456 U.S. 45, 55 (1982) (emphasis added).

The District of Columbia Court of Appeals has similarly distinguished public advocacy from solicitations involving communication aimed at "personal benefit":

> [T]here is a significant distinction between advocacy and solicitation of law violation in the context of freedom of expression. Advocacy is the act of 'pleading for, supporting, or recommending; active espousal' and, as an act of public expression, is not readily disassociated from the arena of ideas and causes, whether political or academic. Solicitation, on the other hand, implies no ideological motivation but rather is the act of enticing or importuning on a personal basis for personal benefit or gain."

*D.C. v. Garcia*, 335 A.2d 217, 224 (D.C. 1975).

The Fourth Circuit in *Rice* similarly described "advocacy" as "speech that is part and parcel of political and social discourse." 128 F.3d at 264. Such speech remains subject to protection under *Brandenburg*. On the other hand, as the Senate Report accompanying 18 U.S.C. § 373 explained, federal criminal solicitation "involves a *hiring or partnership arrangement*, designed to accomplish a specific action in violation of law, where the communication is an essential link in a direct chain leading to criminal action[.]" S. Rep. N. 98-225, 98th Cong. 1st Sess., 1984 U.S.C.C.A.N. 3182, 3488 (1983) (emphasis added). "Solicitation to crime is [thus] similar" to "communication [that] is an integral part of a course of criminal action, [which] is treated as action and receives no protection under the First Amendment." *Id.*

**II.    The Government's Proposed Instruction Outlining First Amendment Protection is Misleading, Confusing, Includes Irrelevant Legal Principles, and Ignores the Most Recent Binding Decisions Outlining First Amendment Protection of Speech.**

The government's proposed instruction makes the following points: (1) crime can be committed through speech; (2) speech is not protected by the First Amendment when it is the "vehicle" of the crime itself, constitutes aiding and abetting, inducement of another to take violent action, the teaching of "concrete action," the "steeling" of others to take a violent action, "*or* was intended to generate or was likely to generate imminent criminal action by others;" (3) the First Amendment does not prohibit the evidentiary use of speech; and (4) the First Amendment only protects "theoretical advocacy" or the "abstract teaching [of] the moral propriety" or "moral

necessity for a resort to force."

Jury instructions must "adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury[.]" *See United States v. Kivanc*, 714 F.3d 782, 794 (4th Cir. 2013). Accordingly, a "trial judge's instructions to the jury must reasonably relate to the factual situation of the case[,]" *United States v. Salliey*, 360 F.2d 699, 702 (4th Cir. 1966), as contrasted with merely reflecting "abstract" legal principles "divorced from the concrete facts of the case." *United States v. Holley*, 502 F.2d 273, 276 (4th Cir. 1974).

Finally, wholesale importation of quotations from appellate opinions into jury instructions "fundamentally misconceives the role of appellate opinions" which "are not jury instructions, nor are they meant to be." *Noel v. Artson*, 641 F.3d 580, 588 (4th Cir. 2011). While "appellate opinions may guide a district judge's discretion when formulating jury instructions[,]" "appellate opinions cannot mechanically supply jury instructions," particularly when the appellate opinion "dealt with a completely different factual scenario." *Id.*

As an initial matter, the government's proposed instruction is largely drawn from language in *Rice v. Paladin Enters.*, 128 F.3d 233 (4th Cir. 1997), a civil case that "dealt with a completely different factual scenario" than this case. Specifically, it involves tort liability grounded on an aiding and abetting theory based on the publication of a how-to manual called "Hit Man" designed and intended to help others to commit murder. *Id.* at 249 & 264 n.11.

Moreover, many of the legal principles in the government's proposed

8

instruction have no bearing on this case. That "crime can be committed through speech" is not contested in this case, although it was certainly an issue in *Rice* and *Giboney*. Nor does it matter in this case that aiding and abetting is categorically excluded from First Amendment protection – or that examples of aiding and abetting conduct, such as the teaching of "concrete action," are likewise excluded. The fact that "inducement" of criminal conduct can be prohibited is likewise irrelevant in this case, as the government does not allege that Mr. Stinson's communications actually caused anyone to attempt to assassinate President Trump.

Nor does it matter that the First Amendment does not prohibit the evidentiary use of speech. While that point is undoubtedly true, it is not accurate to say, as the government's instruction provides, that "speech integral to criminal conduct such as offers to engage in illegal transactions, threats, or solicitations, are categorically excluded from First Amendment protection" "[f]or th[e] reason" that speech can be admissible to establish the elements of an offense.

The government's instruction also misstates *Brandenburg*'s test of incitement, stating that speech is unprotected if it "was intended to generate *or* was likely to generate imminent criminal action by others." Incitement requires proof of both intent for imminent action *and* the likelihood of causing imminent lawlessness. *See Counterman*, 600 U.S. at 76 (speech constitutes incitement if "the speaker's words were 'intended' (not just likely) to produce imminent disorder").

The government's instruction likewise misrepresents *Rice*'s analysis of *Brandenburg* and ignores the Fourth Circuit's more recent opinion in *Miselis*, stating

9

that the First Amendment protects only "theoretical advocacy," "advocacy of principles divorced from action[,]" and "mere abstract teaching[,]" and excludes "the 'steeling' of others to take [] violent action." Ex. 1 (citing *Rice*, 128 F.3d at 249). While Judge Luttig's opinion for the court does make such statements on page 249, the government ignores that the opinion goes on to emphasize that *Brandenburg*'s fundamental legal distinction is between "mere advocacy" and "incitement to lawless action." *Id.* at 264. Indeed, the opinion states that *Brandenburg* "may well have intended to equate the preparation and steeling of a group to violent action with speech that is directed to inciting imminent lawless action and likely to produce such action." *Id.* In other words, in the context of advocacy, there is no category of unprotected speech that involves "steeling" a group to action outside of conduct that amounts to incitement.

The government's proposal that the Court instruct the jury that speech is unprotected when it is "the very vehicle of the crime itself" is quoted in *Rice* as a parenthetical from a Sixth Circuit decision, *United States v. Varani*, 435 F.2d 758 (6th Cir. 1970). *Rice*, 128 F.3d at 244. That case involved a prosecution for violating 26 U.S.C. § 7212(a), which prohibits threats of force to obstruct IRS employees from doing their job. As explained above, speech that is "an integral part of conduct" that violates the law is not protected by the First Amendment. *Giboney*, 336 U.S. at 498. But that principle rests on speech that has some independent legal significance beyond mere encouragement of another to violate the law. *See id.* at 503.

Finally, the government's closing quotation from *Brown v. Hartledge*, 456 U.S.

at 55, omits critical language stating that a criminal solicitation by a politician (to provide something of value in return for a vote) "may properly be prohibited" because it "remains in essence an invitation to engage in an illegal exchange for private profit." *Id.* The omitted language mirrors the central distinction between protected advocacy and criminal solicitation reflected in the legislative history of § 373, as the latter requires proof of an unlawful proposal involving "a hiring or partnership arrangement, designed to accomplish a specific action in violation of law." 1984 U.S.C.C.A.N. at 3488.

At bottom, the government's proposed instruction fails to inform the jury of the central basis for Mr. Stinson's defense, that "mere encouragement is quintessential protected advocacy[,]" *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020), and criminal solicitations excluded from First Amendment protection require proof of serious proposals involving "a hiring or partnership arrangement, designed to accomplish a specific action in violation of law." Because the government's proposed instruction is misleading, confusing, and includes substantial portions that are unrelated to the charged offense, the Court should reject the government's proposed instruction as to the application of the First Amendment in this case.

Date: October 26, 2025                           Respectfully submitted,

                                                 **PETER ANDREW STINSON**

                                                 By Counsel,

                                                 _____/s/_____

Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Brittany Davidson
Va. Bar No. 90660
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org
Brittany_Davidson@fd.org